COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss                                                 SUPERIOR COURT DEPARTMENT
                                                          CIVIL ACTION NO. _____

---

ROBERT LEAVENS,                        )
                                       )
                  Plaintiff,           )
                                       )
      v.                               )
                                       )              **COMPLAINT**
MASSACHUSETTS DEPARTMENT OF            )
ENVIRONMENTAL PROTECTION and UNITED    )
STATES COAST GUARD,                    )
                                       )
                  Defendants.          )
                                       )
                                       )

---

## INTRODUCTION

1.      This is an action under M.G.L. c. 30A, § 14 for judicial review of Final Decisions

of the Massachusetts Department of Environmental Protection ("DEP") resulting in the issuance

of a Final Order of Conditions to the United States Coast Guard ("USCG") under the

Massachusetts Wetlands Protection Act, M.G.L. c. 131, § 40 and implementing regulations at

310 CMR 10.00 approving the USCG's proposed lead remediation project (the "Project") at

property on Baker's Island in Salem, Massachusetts on which the USCG has historically

operated a light station (the "Light Station" or "Light Station property").  In this action, the

plaintiff also seeks declaratory and injunctive relief as related to the DEP's Final Order of

Conditions and the Project more generally.

2.      Copies of the DEP's "Final Decision on Reconsideration" issued on June 22,

2010 and the resulting Final Order of Conditions issued on June 24, 2010 ("Final Order") are

included in Exhibit I hereto.  Copies of related decisions, rulings and orders that preceded the

1

DEP's Final Decision on Reconsideration and Final Order, and that are also challenged in this appeal, are attached as <u>Exhibits A – H</u> hereto (as identified below).

3.    The DEP's Final Decision on Reconsideration and related Final Order result from deficient and flawed review proceedings, stem from administrative rulings and orders that were also flawed, and are unreasonable, arbitrary and capricious, in excess of the DEP's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful.  Moreover, the USCG cannot lawfully proceed with its Project pursuant to such Final Order because, among other reasons, (a) the USCG cannot lawfully record the Final Order in the Registry of Deeds within the chain of title for the affected property (a mandatory prerequisite under the Massachusetts Wetlands Protection Act and DEP's implementing regulations) and (b) the USCG lacks other permits and approvals required for its Project.  Accordingly, the plaintiff seeks a preliminary and permanent injunction prohibiting the USCG from commencing the Project until it can comply with such recording requirements and has secured all required permits and approvals.

4.    The Project, as approved through the Final Order, will result in substantial and unique injuries to the plaintiff – who owns property abutting the Light Station property.

<b><u>JURISDICTION AND VENUE</u></b>

5.    This court has jurisdiction to review the DEP's Final Decision on Reconsideration and Final Order, which were issued after an adjudicatory proceeding, pursuant to M.G.L. c. 30A, § 14(1).  The court also has authority to issue declaratory and preliminary and permanent injunctive relief under, among other statutory authority, the Wetlands Protection Act, M.G.L. c. 131, § 40, ¶ 30, M.G.L. c. 30A, § 14(3), and M.G.L. 231A, § 1.

2

6.    Venue is proper under the provisions of G.L. c. 30A, § 14(1)(a) because the plaintiff resides in Essex County. The Light Station is also located in Essex County.

## PARTIES

7.    Plaintiff Robert Leavens ("Leavens") resides at and owns property 385 Magnolia Avenue, Gloucester, MA 01930. Leavens also owns property located on Baker's Island shown on the Salem Tax Assessor's Map 46 as Lot 89, which land shares an approximately 200-foot common boundary with the property on which the Light Station is located. Leavens participated in the DEP's underlying permit proceedings and in the adjudicatory appeal proceedings in which the DEP's Final Decision on Reconsideration and Final Order were issued. Leavens is a person aggrieved by, and will suffer harm as a result of, the Department's Final Decision on Reconsideration and Final Order and the USCG's Project.

8.    Defendant Massachusetts Department of Environmental Protection ("DEP") is an administrative agency of the Commonwealth of Massachusetts responsible for the administration and enforcement of the Wetlands Protection Act and the regulations promulgated thereunder. It has a principle place of business at One Winter Street, Boston, Massachusetts.

9.    Defendant United States Coast Guard ("USCG") is a federal agency. The USCG is the historical operator of the Light Station, the Project proponent, and the applicant for the Final Order of Conditions unlawfully authorized to be issued through the DEP's Final Decision.

## FACTS

### Initial Project and Conservation Commission Review Proceedings

10.    On or about August 19, 2008, the USCG, through its designated agent Alfred Stambler, filed a Notice of Intent (NOI) with the Salem Conservation Commission ("the Commission) seeking approval under the Massachusetts Wetlands Protection Act and Salem

Wetlands Protection Ordinance in connection with its proposed lead remediation project (the

"Project") at the Light Station property.  As proposed in the NOI, the Project would impact

protected wetland resource areas – including Coastal Bank, Coastal Beach, and Land Subject to

Coastal Storm Flowage – associated with the USCG's proposed means of accessing the

remediation areas.  Specifically, the USCG proposed getting construction equipment and soils to

and from the site by mooring a "shallow-draft barge" on the beach and placing wooden "mats"

on the beach and coastal bank.  Contaminated soil was proposed to be transported over the

wooden mats, placed on the barge, and transported to shore.  Clean fill would similarly be

transported to the site and remediation areas for use as backfill in excavated areas.

11.     On September 25, 2008, the Commission opened a public hearing on the NOI

(DEP File No. 64-479).  Alfred Stambler presented the NOI and Project to the Commission on

the USCG's behalf.

12.     Prior to the opening of the public hearing, Leavens and other interested persons

submitted letters to the Commission generally supporting the USCG's remediation of the Light

Station property, but raising legitimate questions and comments related to the NOI and Project.

Among other items, those letters pointed out that the ownership and/or lot lines of the Light

Station property were in doubt and questioned whether the USCG or other federal agency owned

the property as asserted in the NOI.

13.     During the public hearing on September 25, 2008, Leavens stated that the United

States and/or USCG could not confirm ownership of the property, as there was no recordation of

property ownership in the Essex South District Registry of Deeds.  He also pointed out that,

without there being any such recorded title at the registry, the USCG could not comply with the

provisions of the Wetlands Protection Act and implementing regulations that require an Order of

Conditions to be recorded in the chain of title for the affected property prior to commencement of any work covered by the Order. Leavens provided an affidavit from a title attorney confirming that the USCG does not have a clear and marketable title to the Light Station property. Leavens also noted that there was anecdotal evidence that there was mercury on the property (from the removal of the Fresnel lens in the light house), that the application was incomplete and that he did not believe that the USCG was proposing lead remediation at an acceptable level in accordance with Massachusetts standards for lead in the soil. He stated that the lead remediation was not protective of the environment.

14.     During the Commission's September 25, 2008 meeting, John Palmer of Charter Environmental, a contractor to the USCG, stated that the USCG and its contractors would provide access to the remediation site for use by construction equipment and for the movement of contaminated soil by mooring a "shallow-draft barge" on the beach and placing wooden "mats" on the beach and coastal bank. He stated that contaminated soil would be moved over the coastal bank to the beach and onto the barge to shore. He stated that clean fill would be brought in over the same access route to fill in areas where contaminated soil had been excavated.

15.     The Commission conducted a site visit on October 4, 2008, attended by several members of the Commission, several abutters and others. The Commission requested additional information, including contours and survey information from the USCG, and requested that additional lead level testing be conducted around the engine house and jeep shed.

16.     The Commission continued their hearing on October 23, 2008, at which time the Commission's agent and the Commission noted discrepancies in the title information provided by the USCG and noted that the NOI was incomplete.

17.     The Commission continued its meeting to January 8, 2009, at which time it asked a number of technical questions of the USCG.  Leavens continued to point out that the USCG had no recorded deed for the Light Station property on record at the Essex South District Registry of Deeds and point out that, therefore, the USCG could not comply with the recording requirements for Orders of Conditions.

18.     On January 8, 2009, the Commission closed the public hearing and voted to issue an Order of Conditions approving the Project (under state and local laws), with certain conditions discussed at the hearing.   It issued a written Order of Conditions to Alfred Stambler, USCG, on January 15, 2009.  A copy of the Commission's Order of Conditions is attached as Exhibit A hereto.

19.     The Commission did so without having addressed the legitimate questions and comments of Leavens and other neighbors, without ensuring that the Project would be implemented in a manner that appropriately protected the coastal resource areas, without confirming that the USCG could comply with the applicable recording requirements, and without otherwise requiring a complete and accurate NOI. The Commission's decision was unreasonable, arbitrary and capricious, in excess of the Commission's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful.

6

**Plaintiff's Request for Superseding Order of Conditions and Related Proceedings**

20.     On January 26, 2009, Leavens appealed the Commission's Order of Conditions, as issued under the state Wetlands Protection Act, by filing a request for Superseding Order of Conditions with the DEP.  Leavens also separately appealed the Commission's decision as issued under Salem's local wetlands protection ordinance to the Salem City Council (the appeal avenue specified in the ordinance).  Leavens' local appeal remains pending as of the date hereof and, as such, the Commission's local Order of Conditions is not final.

21.     On or about February 5, 2009, representatives of the USCG unlawfully recorded the Commission's Order of Conditions in the Essex South District Registry of Deeds (at Book 28300, Page 543) in the chain of title for land owned by others, including land beyond the boundaries of the Light Station property.  Alfred Stambler was listed as the grantee in the Registry of Deeds recording.

22.     On or about March 18, 2009, DEP conducted a site visit to the Light Station property in connection with Leavens' request for a Superseding Order of Conditions.

23.     On or about May 26, 2009, the USCG significantly revised its Project – specifically, as related to its proposed access route over the beach and bank.  In lieu of providing a barge and series of wooden mats to protect the beach and coastal bank (as presented in the NOI and as approved by the Commission), the new plans called for construction of an off-load ramp (20-foot by 60-foot) constructed of concrete blocks and a riprap pad (50-foot by 25-foot).  The area of impact associated with these structures was greater than the area of impact previously proposed and approved by the Commission, and extended down to the low water level.

24.     The USCG did not, and has not to date, formally presented its revised Project to the Commission – either by way of a new NOI or a request for an amendment to the

7

Commission's previously-issued state or local Order of Conditions and there have not otherwise been, in any context, any public hearing or public comment period provided for in connection with its revised Project (in violation of, among other requirements, DEP's Project Plan Change policy, DWW Policy 91-1).

25.     On or about August 14, 2009, the DEP issued a Superseding Order of Conditions (SOC) approving the Project to Alfred Stambler, USCG. A copy of the DEP's SOC is attached as Exhibit B hereto.

26.     The SOC substantially weakened the Commission's OOC by, among other things, removing the requirement of having a Licensed Site Professional on site and making optional the Commission's requirement that the USCG return to the Commission for an amended OOC if further testing of the jeep shed and engine house required expanded remediation work.

27.     The DEP issued the SOC without appropriately addressing the significant Project revisions made during the DEP's review process. The DEP also issued the SOC without having addressed the legitimate questions and comments of Leavens, without ensuring that the Project would be implemented in a manner that appropriately protected the coastal resource areas, without confirming that the USCG could comply with the applicable recording requirements, and without otherwise requiring a complete and accurate NOI. The DEP's SOC was unreasonable, arbitrary and capricious, in excess of the DEP's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful.

28.     On or about August 15, 2009, Alfred Stambler, the USCG's designated representative in the NOI and recipient of the Commission's Order of Conditions and SOC, retired from the USCG. On information and belief, the USCG never submitted to DEP or the

8

Commission any written notice of this change in its authorized agent as required by 310 CMR 1.01(2)(c).

## Administrative Appeal and Related Proceedings and Decisions

29.     On or about August 25, 2009, Leavens filed a timely administrative appeal of the DEP's SOC with the DEP's Office of Administrative Appeals and Dispute Resolution.

30.     On or about September 10, 2009, a scheduling order was issued in the administrative appeal.

31.     On or about September 20, 2009, Leavens filed and served his Pre-Screening Conference Statement.

32.     On or about September 21, 2009, MassDEP issued a Pre-Hearing Statement.

33.     On or about September 21, 2009, Leavens contacted Rachel Marino ("Marino") of the USCG, who stated that she was taking over the Project for Alfred Stambler.  Marino was not aware of the Pre-Screening Conference scheduled for September 23, 2009.

34.     On or about September 22, 2009, the Presiding Officer who was then assigned to the appeal, Beverly Coles-Roby, issued an Order in response to an email from R. Marino (USCG ), in which Marino stated that she did not receive notice of the Pre-Screening Conference. Presiding Officer Coles-Roby treated the request as a "Motion to Continue Pre-Screening Conference," and stated that "the applicant has demonstrated good cause for the continuance," as the USCG purportedly had not assigned legal counsel to the case.

35.     On or about November 3, 2009, Leavens and the DEP enter into negotiations regarding five outstanding issues and concerns of Leavens.  Agreement was made on three issues to be addressed in any Final Order of Conditions, as related to:  (1) testing and, as necessary, remediation around the jeep shed and fog horn/engineer house buildings (with amended OOC);

(2) use of the temporary rip-rap "crash pad" on the beach for no more than 90 days, and (3) submission of the revised Project plans to the Salem Conservation Commission for review (pursuant to DEP's Project Plan Change policy, DWW Policy 91-1).

36.     Outstanding issues that remained to be resolved in the adjudicatory appeal related to (1) the inability of the USCG to record the Order of Conditions in the chain of title of the affected property (see G.L. c. 131, § 40 and 310 CMR 10.05 (4)), and (2) the proposed remediation level of 400 mg/kg, which is below the state-required level of 300 mg/kg as required for appropriate protection of the environment, human health, and public welfare.

37.     On or about November 9, 2009, the USCG issued its Pre-Screening Conference Statement.

38.     On or about November 18, 2009, the USCG issued an amended Pre-Screening Conference Statement. In that statement, the USCG admitted that it does not hold title to the Light Station property, stating that "The Coast Guard does not hold title to any property in its own name because neither the agency nor any official thereof has the statutory requirement to hold title to real property." Its amended statement also stated that "USCG lawyers working on real property issues routinely deal with properties for which there is no recorded instrument of conveyance and/or any copy of such instrument in agency files."

39.     On or about November 10, 2009, a Pre-Screening Conference was held at DEP's Northeast Regional office. During that conference, USCG representatives confirmed that the USCG did not have a recordable title instrument for the Light Station property and that no such instrument for the Light Station property was recorded at the Essex South District Registry of Deeds.

10

40.     On or about December 4, 2009, Presiding Officer Coles-Roby issued a Pre-Screening Conference Report and Order.  That Order misstated and/or mischaracterized the "issues for resolution" that the parties had agreed to at the Pre-Screening Conference.  A copy of that Order is attached as Exhibit C hereto. The Order misidentified the issues as follows:

> 1.  Whether the United States holds recordable title to the real property where the work is proposed to take place?
>
> 2.  Whether the remediation of the lead contaminated soils is sufficient under the Massachusetts Contingency Plan, 310 CMR 40.0000 et seq.?

41.     On or about December 7, 2009, Presiding Officer Coles-Roby issued an Order to remove a witness from Leavens' witness list, Kevin Cornacchio, the Chairman of the Salem Conservation Commission at the time it issued the Order of Conditions for this Project.  A copy of that Order is attached as Exhibit D.  That Order was issued without justification and without Leavens' consent.  Leavens objected to this Order and filed and served a motion to have Mr. Cornacchio reinstated as one of his witnesses.

42.     On or about December 7, 2009 (and again thereafter), Leavens filed and served a motion to amend the Pre-Screening Conference Report and Order – objecting to, among other portions of it, the inaccurate statements of the "issues for adjudication."  The first issue, more accurately, is whether the USCG can comply with the requirement that the Order of Conditions be recorded at the registry within the chain of title of the property where it does not have any recorded title instrument.  The second stated issue was accurate, but incomplete in that it did not encompass the broader question of whether a more stringent and/or comprehensive cleanup is or will be required to appropriately protect the environmental, public health and public welfare – as required under the Massachusetts Contingency Plan.

11

43.     On or about December 22, 2009, Presiding Officer Coles-Roby issued an "Order on Motion to Amend Pre-Screening Conference Report and Order." A copy of that Order is attached as Exhibit E. In that Order, she addressed some of Leavens' objections to the Pre-Screening Conference Ruling and Order, but refused to correct the two stated issues for adjudication, to amend the schedule, or to allow Mr. Cornacchio to remain as one of Leavens' witnesses.

44.     The Presiding Officer's December 4 Pre-Screening Conference Report and Order, December 7 Order, and December 22 Order (to the extent it denied Mr. Leavens' requests for amendment), were unreasonable, arbitrary and capricious, in excess of the Presiding Officer's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful.

45.     On or about December 28, 2009, Leavens filed and served a motion objecting to Presiding Officer Cole-Roby's December 22 Order and her refusal to amend the stated issues for adjudication.

46.     On or about December 30, 2009, DEP filed a Motion for Summary Decision.

47.     On or about January 7, 2010, Leavens responded to the DEP's Motion for Summary Decision.

48.     On or about February 5, 2010, Presiding Officer Coles-Roby issued an Order to show cause why the case should not be dismissed.

49.     On or about February 10, 2010, the USCG (Merino) filed a Joint Motion to Cancel Hearing, with a notation that three parties – not including Leavens, the Petitioner – have reached agreement on two issues, and attaching a draft settlement agreement and a Joint Motion to Approve the Settlement Agreement (submitted by the three agreeing parties).

50.     On or about February 12, 2010, Leavens filed and served responses to the Order

to Show Cause and the Joint Motions submitted on February 10.

51.     On February 12, 2010, DEP circulated a notice to all parties stating that the

administrative appeal was being transferred from Presiding Officer Coles-Roby to Pamela

Harvey.  Presiding Officer Harvey also circulated a docket sheet and requested that the parties

provide corrections to the docket sheet.

52.     On or about February 16, 2010, Leavens filed a Motion to Correct Errors and

Omissions in the Proceedings, Docket and Filings.  A significant number of filings by Leavens

had not been docketed and had been omitted from the record.  In his motion, Leavens requested

numerous corrections to the docket and brought to the DEP's attention a number of procedural

flaws in the hearing process.

53.     The established deadline for the Recommended Final Decision was March 18,

2010.

54.     On or about March 23, 2010, Presiding Officer Harvey issued a Recommended

Final Decision.  A copy of the Recommended Final Decision is attached as Exhibit F hereto.

55.     In the Recommended Final Decision, Presiding Officer Harvey concluded "that a

Final Order may be issued to the U.S.C.G. despite the recording issues asserted by the Petitioner

and that the provisions related to the standard for lead remediation that may not be adjudicated in

this forum" (pp. 15-16).

56.     The Recommended Final Decision states, among other things, the following:

> ➤ "The Department does not view recordation as a prerequisite to the issuance
> of an Order, but instead views a failure to record as a violation of the Order
> which is subject to the exercise of enforcement discretion" (p. 5).

> ➤ "The purpose of the recordation requirement is to provide notice of the
> existence of the Order, most importantly to prospective or subsequent

purchasers . . . . Thus, it is the Essex National Heritage Commission, the entity to which the property will be transferred, that is potentially most directly affected by the recordation requirement."

57.     As related to the recording issue, the Recommended Final Decision includes two "recommendations." The first is that the DEP provide Leavens and the Essex National Heritage Commission (ENHC), as prospective owner of the Light Station property, with copies of the Final Order of Conditions with the Final Decision at the same time they are sent to the USCG. The second is that the Final Order include a condition requiring the USCG to ensure that the Final Order and the Certificate of Compliance is referenced or recorded with the quit claim deed that will be created to memorialize the conveyance to the Essex National Heritage Commission (ENHC). However, ENHC is not a current owner of the Light Station property, was not a co-applicant for the Order of Conditions, and was not a party to the administrative proceedings before the DEP, and there is currently no deed or other instrument of title with respect to which the Final Order of Conditions can be recorded in the chain of title – prior to implementation of the Project or the potential future sale of the property to ENHC.

58.     On April 7, 2010, DEP Commissioner Laurie Burt issued a "Final Decision" adopting the Recommended Final Decision. A copy of the April 7, 2010 "Final Decision" is attached as Exhibit G hereto.

59.     The April 7 Final Decision notes that a motion for reconsideration must be filed with the Case Administrator and served on all parties within seven business days of the postmark date of the decision, and also that any complaint seeking judicial review filed in Superior Court "must be filed in the Court within thirty days of receipt of this Decision."

60.     Leavens filed a timely motion for reconsideration. On May 7, 2010, while the motion for reconsideration was pending, Leavens also filed a judicial appeal of the April 7, 2010

14

Final Decision in Massachusetts Superior Court.  <u>Leavens v. Massachusetts Department of</u>
<u>Environmental Protection and United States Coast Guard</u>, Civil Action No. 10-967 (Essex
County).

61.     On May 21, 2010, the Presiding Office in the administrative appeal issued a
Recommended Decision on Reconsideration.  A copy of the Recommended Decision on
Reconsideration is attached as <u>Exhibit H</u> hereto.

62.     On June 22, 2010, DEP Commissioner Laurie Burt issued a "Final Decision on
Reconsideration" adopting the Recommended Decision on Reconsideration.  With that decision,
Commissioner Burt also issued a Final Order of Conditions (issued by certified mail on June 24,
2010) approving the Project with conditions.  Copies of the June 22, 2010 "Final Decision on
Reconsideration" and accompanying Final Order of Conditions are attached as <u>Exhibit I</u> hereto.

63.     The DEP's Final Decision on Reconsideration and Final Order of Conditions
result from deficient and flawed review proceedings, stem from administrative rulings and orders
that were also flawed, and are unreasonable, arbitrary and capricious, in excess of the DEP's
authority, unsupported by substantial evidence, based on substantial errors of law and incomplete
and inaccurate information, and otherwise unlawful.

64.     The DEP lacks the authority under M.G.L. 131, § 40 to tie a Final Order of
Conditions to a deed subsequent.

65.     The DEP erred in its interpretation of and application of the recording
requirements applicable to Final Orders of Conditions, as provided in the Wetlands Protection
Act and DEP's regulations.  It also misconstrued the purpose of those requirements and the
importance of those requirements to ensuring, among other things, (1) that the approved work is
authorized by the actual owners of the property on which the work is proposed, (2) that the

approved work will be completely in accordance with the Order of Conditions and in a timely

manner, and (3) that the issuance of the Order of Conditions and subsequent work is done in a

manner and recorded in a manner such that there is no resulting adverse impacts to the title of the

property at issue (or abutting properties).

66.     Among the other issues and errors noted above and in Leavens submittals to the

DEP in the administrative proceedings:

a.  The DEP lacks the authority under M.G.L. 131, § 40 to tie a Final Order to a deed

subsequent.

b.  The DEP erred in its mischaracterization and misunderstanding of the issues in

dispute and to be adjudicated in the administrative appeal;

c.  The DEP erred in its interpretation of and application of the recording

requirements applicable to Final Orders of Conditions, as provided in the

Wetlands Protection Act and DEP's regulations.

d.  The DEP misconstrued the purpose of those requirements and the importance of

those requirements to ensuring, among other things, (1) that the approved work is

authorized by the actual owners of the property on which the work is proposed,

(2) that the approved work will be completely in accordance with the Order of

Conditions and in a timely manner, and (3) that the issuance of the Order of

Conditions and subsequent work is done in a manner and recorded in a manner

such that there is no resulting adverse impacts to the title of the property at issue

(or abutting properties).

e.  The DEP erred in issuing a Final Order of Conditions for the Project as it was

significantly revised during the DEP review process – without requiring a new

16

Notice of Intent or, at the very least, an additional public hearing process before the Conservation Commission.

f.  The DEP erred in issuing a Final Order of Conditions for the revised Project where the revised Project had not undergone pre-permitting review pursuant to the Massachusetts Environmental Policy Act (MEPA), M.G.L. c. 30, §§ 61-62I, and MEPA's implementing regulations at 301 CMR 11.00 – and where the August 7, 2009 Certificate of the Secretary of Energy and Environmental Affairs on the USCG's Environmental Notification Form requires the filing of a Notice of Project Change for Project revisions of the sort made by the USCG during the DEP's review process.

g.  The DEP erred in its refusal to evaluate in any meaningful way the USCG's proposed cleanup levels, the sufficiency of the investigation conducted at the site to date (and related need for further investigation and remediation), and the impacts that the remediation Project as currently proposed will have on wetland resources – particularly where the USCG's investigation to date is incomplete. Among other issues, if the Project does not accomplish appropriately stringent cleanup levels in all impacted areas of the property, (1) the residual contamination may contaminate those resources, and (2) there will be a need to conduct additional remediation in the future – which will involve duplication of the same resource area impacts currently proposed. These factors must be considered in connection with DEP's obligation to evaluate alternatives for avoiding, minimizing, and mitigating adverse impacts to wetland resources.

17

h. The DEP erred in issuing a Final Order of Conditions that it already knows the USCG cannot comply with as related to the recording requirements. Special Condition No. 59 of the Final Order of Conditions anticipates the USCG's inability to comply, but does nothing (and fails) to cure the defect.

67. Moreover, even if the Final Order of Conditions authorizing the work were valid, the USCG cannot lawfully proceed with its Project pursuant to such Final Order because, among other reasons, (a) the USCG cannot lawfully record the Final Order in the Registry of Deeds within the chain of title for the affected property, (b) the USCG lacks other permits and approvals required for its Project, including among others, the following:

a. A final Order of Conditions from the Commission under Salem's wetlands protection ordinance – for which it submitted a Notice of Intent and received, but which Leavens has appealed, with the appeal still pending;

b. A modified Order of Conditions from the Commission under Salem's wetlands protection ordinance;

c. A Certificate under MEPA on a Notice of Project Change relating to the Project as it was revised during the DEP review process and as is likely to be revised in light of additional sampling conducted or to be conducted at the Property.

d. Permits and/or licenses from the US Army Corps.

**COUNT I**
**(M.G.L. c. 30A, § 14(1) – Appeal of Agency Decisions)**

68. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 67 above as though fully set forth here.

69. The DEP's proceedings – including those related to Leavens' request for SOC and the subsequent administrative appeal proceedings – were deficient and flawed.

18

70.     The DEP's Final Decision on Reconsideration and Final Order of Conditions, the

preceding Final Decision, Recommended Final Decision, and other orders and rulings issued by

the Presiding Officer in the administrative appeal, are unreasonable, arbitrary and capricious, in

excess of the DEP's authority, unsupported by substantial evidence, based on substantial errors

of law and incomplete and inaccurate information, and otherwise unlawful.  Accordingly,

pursuant to M.G.L. c. 30A, § 14(1), they should be annulled.

**COUNT II**
**(c. 231A, § 1 – Declaratory Judgment)**

71.     Plaintiffs repeat and incorporate by reference the allegations contained in

Paragraphs 1 through 70 above as though fully set forth here.

72.     There is an actual controversy between the plaintiff and the Defendants regarding

the issues identified in the preceding Paragraphs, including among others:

a.   Whether the DEP's Final Decision on Reconsideration, Final Order of Conditions,

and preceding Final Decision are valid and effective and/or whether they should

be annulled pursuant to Count I;

b.   Whether DEP has the authority to issue a Final Order of Conditions when, as

here, it knows and acknowledges that compliance with the Final Order and related

regulations is not possible;

c.   Whether DEP must evaluate the proposed cleanup standards and sufficiency of

the investigation work completed in connection with its evaluation of potential

adverse impacts to wetland resource areas and alternatives for avoiding,

minimizing, and mitigating those impacts.

d.   Even if the DEP's Final Order of Conditions is held to be valid, whether the

USCG can lawfully proceed with its Project where

19

i.  it cannot comply with the recording requirements of the Massachusetts

Wetlands Protection Act and DEP's implementing regulations;

ii. it lacks other permits and approvals required for its Project.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff requests that the Court:

1.  Grant a Short Order of Notice for a stay of enforcement and/or preliminary

injunctive relief;

2.  Issue a stay of enforcement of the DEP's Final Decision on Reconsideration, Final

Order of Conditions, and Final Decision pursuant to G.L. c. 30A, § 14(3), and a

preliminary injunction prohibiting the commencement of any work on the Project

pursuant to the Final Order of Conditions in order to prevent the issues in this

case from becoming moot, and to safeguard the public interest in protecting

wetland resources, pending the completion of judicial review before this court;

3.  Annul the DEP's Final Decision on Reconsideration, Final Order of Conditions,

and Final Decision;

4.  Declare that

a.  the DEP's Final Decision on Reconsideration, Final Order of Conditions, and

Final Decision are not valid;

b.  the USCG cannot comply with the applicable pre-construction recording

requirements by recording the Final Order of Conditions and/or Certificate of

Compliance with a deed subsequent – after the work has been completed;

20

    c.  DEP lacks the authority to issue a Final Order of Conditions when, as here, it knows and acknowledges that compliance with the Final Order of Conditions and related regulations is not possible;

    d.  DEP must evaluate the proposed cleanup standards and sufficiency of the investigation work completed in connection with its evaluation of potential adverse impacts to wetland resource areas and alternatives for avoiding, minimizing, and mitigating those impacts.

    e.  Even if the Final Order of Conditions were valid, work pursuant to the Final Order of Conditions cannot proceed until the USCG has

        i.  complied with the pre-commencement recording requirements;

        ii.  secured all other permits/approvals required for its revised Project.

5.     Award the plaintiff his costs in this action; and

6.     Grant the plaintiff such other relief as the Court deems just and proper.

Respectfully submitted,

ROBERT LEAVENS,

By his attorney,

Jeffrey L. Roelofs (BBO# 628645)
LAW OFFICES OF JEFFREY L. ROELOFS, P.C.
30 Green Street
Newburyport, MA 01950
Tel:  (978) 462-7600
jlr@roelofslaw.com

Dated:  July 20, 2010